UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| JEFFREY R. BAILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV413-014 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Jeffrey Bailey, a 39-year-old man suffering from Marfan's Syndrome, applied for a period of disability and disability insurance benefits with an onset date of February 12, 2010. (Tr. 14.) His application was denied both initially and on reconsideration. (*Id.*) An Administrative Law Judge ("ALJ") conducted a hearing and denied benefits. (Tr. 14-22.) The Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4.) He then filed a complaint for judicial review in this Court contending that the ALJ erred in reaching his determination. (Doc. 1.)

# I. STANDARD OF REVIEW

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met the burden, the Court looks to the five-

step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Moore*, 478 F. App'x at 624.

## II. ANALYSIS

Bailey, who worked as an automobile painter, claimed before the Commissioner that Marfan's Syndrome and some related illnesses, including scoliosis and mitral valve leaks, interfered with his ability to continue employment.[1] (Tr. 16, 172.) The ALJ found that all three conditions were severe at step two but that none of them individually or in combination met a listed requirement at step three. (Tr. 16.) At step four, the ALJ held that Bailey retained the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can stand/walk for 3-4 hours total out of an 8-hour workday, but no more than 1 hour at a time on his feet. This requires a sit/stand option. He can sit for 4-6 hours total, but for no more than 2-3 hours at a time. Again, this requires a sit/stand option. He should never climb ladders, ropes, or scaffolds, or balance. He can crouch occasionally, and frequently crawl and kneel. He can occasionally climb ramps and stairs, and work around unprotected heights and dangerous moving machinery. The claimant is a smoker, so he should avoid more than occasional concentrated exposure to dust, fumes, smoke, chemicals, and noxious gasses. He can occasionally tolerate exposure to extreme temperatures and wet and humid conditions. He may experience mild, or fluctuating mild to moderate pain.

---

[1] Marfan's Syndrome is diagnosed by reference to tissue and skeletal changes, eye problems, and vascular defects, "particularly aneurysm of the aorta." STEDMAN'S MEDICAL DICTIONARY 1734 (26th ed. 1995).

4

(Tr. 16-17.) After consulting with a vocational expert ("VE"), the ALJ determined that Bailey could not return to his past work as an automobile painter but could perform several light work jobs. (Tr. 20-22.)

Bailey claims that the ALJ erred by determining that claimant could return to light work with modifications. (Doc. 14 at 5-6.) More specifically, he claims that the ALJ improperly disregarded or discounted a treating physician's opinion and erred by discounting claimant's credibility. (*Id.* at 6-11.) Finally, he asserts that the ALJ erred by failing to address any limitations caused by his stroke. (*Id.* at 11-12.)

**A. Treating Physician**

According to Dr. Mohammad Masroor, Bailey's cardiologist, claimant could work at most for 200 minutes in an eight hour workday. (Tr. 312.) He would be required to lie down and elevate his legs for large portions of the day and would have to take more than five unscheduled 10-15 minutes breaks a day. (Tr. 312-13.) He constantly endures severe pain, and would miss work virtually every day of the month due to his symptoms. (*Id.*) In sum, the doctor stated that Bailey simply could not

5

work. (Tr. 313-14.) Bailey asserts that the ALJ erred by failing to give Masroor's opinion controlling weight. (Doc. 14 at 6-7.)

The opinion of a treating physician must be given "substantial or considerable weight" unless there is "good cause" not to do so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation marks omitted). Good cause exists when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1240–41; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing that the medical opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record). But an ALJ need not accord such weight if the claimant's own testimony regarding his daily activities contradicts that opinion. *See Phillips*, 357 F.3d at 1241. Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ can place on that opinion. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). At bottom, however, "the ALJ may reject any medical opinion if the evidence supports a

contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

Here, the ALJ explained that Dr. Masroor's treatment notes did not support his RFC finding. Rather than a precipitous decline in health, Bailey only began to complain of pain in May 2010, a few months after the alleged onset date, when he was still working "as a [car] painter (!) (normally heavy exertional work)." (Tr. 18.) Admittedly, "claimant was starting to have some problems in May 2010." (*Id.*) But "if he's as helpless as Dr. Masroor has made him out to be, how in the world did he ever manage to function at all as a painter" in the months after the disability onset date? (*Id.*) Masroor's notes generally show a lack of any crippling complaints. By May 2010, the ALJ notes that

> [c]laimant stated he was feeling all right and Dr. Masroor stated the claimant reported no recent cardiopulmonary symptoms. The claimant was alert and in no acute distress. A tremendous pectus excavatum deformity was noted. Heart sounds were regular and satisfactory, with no murmur noted. Dr. Masroor noted the claimant was doing satisfactorily on November 2, 2010. In May 2011, the claimant reported chronic left lower back pain (Exhibit 6F/19). He denied angina and dyspnea. Dr. Masroor noted that he endorsed disability (Exhibit 6F/20).
>
> The Administrative Law Judge notes that the Residual Functional Capacity in the medical source statement provided by Dr. Masroor depicts the claimant as a virtual "dead man walking" (Exhibits 4F, SF, and 10F), while the only difficulties the claimant

was regularly reporting were connected with low back pain. Therefore, as noted above, there is a serious disconnect between what Dr. Masroor's notes say about claimant and what the physician is telling the Social Security Administration.

* * * *

Nothing new came along to explain such a precipitous drop in functioning in the few months between the claimant working and the time of the medical source statement. Therefore, Dr. Masroor's opinions are trumped by reality. Since there is no objective evidence supporting this drop in functionality, the nonsensical opinions of Dr. Masroor are discounted.

(Tr. 18.) The ALJ's findings are consistent with the record.[2]

Bailey admitted that while working as an automobile painter several months after the alleged disability onset date, he regularly lifted loads of 70 pounds. (Tr. 173.) And the only worsening condition that he regularly complained of was severe back pain, which became a more

---

[2] Bailey began treatment at age 23 with Dr. Masroor. (Tr. 325.) Masroor noted that Bailey had his aortic root replaced and a pump installed at the age of 21. (*Id.*) But from 1998 on, his heart sounds were regular with no murmur. (Tr. 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 339, 340, 341.) At one point, mild mitral regurgitation was noted. (Tr. 331.) When he came to an appointment in May 2010, he told Dr. Masroor that he was trying to get disability because the work was becoming too demanding. (Tr. 339.) Nevertheless, he was in no distress. There was still no murmur. (Tr. 339.) His EKG showed sinus bradycardia and left atrial abnormality. (Tr. 339.) Still, "[c]linically the patient is doing all right with compensated cardiac state." (Tr. 340.) Then, in November 2010, he reported "no current cardiopulmonary symptoms." (Tr. 340.) By April 2011, he reported worse back pain. (Tr. 340-41.) But he still "denie[d] any chest discomfort." (Tr. 341.)

8

troublesome problem in April 2011. (Tr. 340-41.) The Court cannot fault the ALJ for finding that Dr. Masroor had shifted from objective medical observer to patient advocate.

The ALJ gave considerable weight to Dr. Wallace, an examining consultative examiner, who found that while claimant suffered from hypertension,[3] he could still sufficiently ambulate, retained his grip, pinch, and motor strength, and should be able to perform work filing, typing, sewing, or working with small pieces of equipment. (Tr. 18-19.) He also assigned weight to Dr. Martinez, an examining orthopedic consultant. (Tr. 19.) She explained that he did suffer from a decreased range of motion and had prominent scoliosis, but he retained normal strength and can sit, stand, and walk for considerable portions of a work day. (*Id.*)

Given that Doctors Martinez and Wallace gave consistent opinions, whereas Dr. Masroor's opinion did not correspond to his treatment notes, it was not error for the ALJ to decline to give Dr. Masroor's RFC finding controlling weight.

---

[3] Despite suffering Marfan's Syndrome, Bailey continued smoking and drinking. (Tr. 334, 335, 370.) Doctor Masroor insisted that he drink at most two beers a day and quit smoking. (*Id.*)

9

## B. Credibility

When a claimant attempts to establish disability through his or her own testimony of subjective pain, the "pain standard" applies. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005). The pain standard demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When coupled with medical evidence which satisfies the pain standard, a claimant's testimony of subjective pain is, in and of itself, sufficient to sustain a disability determination. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ decides to discredit the claimant's testimony, he or she must "articulate explicit and adequate reasons" for doing so. *Id.* The ALJ's finding as to credibility, however, need not be explicit. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). The implication, though, "must be obvious to the reviewing court." *Id.*

In discussing Bailey's credibility, the ALJ noted that Bailey had repeatedly told his doctors that he was doing fine. (Tr. 20.) Moreover,

despite insisting that he couldn't sit for more than 30 minutes, he sat at the ALJ's hearing for more than 45 minutes without any obvious distress. (*Id.*) Too, he was able to perform body work and paint on cars for months after his onset date, and there is scant evidence in the record suggesting that he lost not only the ability to do heavy work but also any work whatsoever. (*Id.*) No medical evidence in the record supported claimant's assertion that he lies down 4 times a day for 45 minutes to one hour. (*Id.*) And he watches movies and reads the Bible despite testifying that he is often drowsy. (*Id.*) He also shops, cooks, grills, vacuums, and swims. (*Id.*)

Bailey repeatedly misrepresents the ALJ's opinion. He states that the ALJ implicitly thought he should have testified that his worst problem was mitral valve leaks, not scoliosis. (Doc. 14 at 8.) The ALJ, however, simply thought it was odd that claimant consistently reported that he was doing fine, rather than explaining that he felt weakened from his cardiac condition. (Tr. 20.) Next, Bailey insists that the ALJ improperly relied on a sit and squirm test. (Doc. 14 at 8.) The ALJ did no such thing. He explicitly stated that claimant's lack of obvious discomfort was not dispositive. He simply noted a total lack of distress,

11

which seemed at odds with Bailey's assertion that he could only sit for a few minutes at a time. (Tr. 20.) It is hornbook law that an "ALJ may consider the claimant's 'appearance and demeanor during the hearing' as a basis of credibility." *Weekly v. Comm'r of Soc. Sec.*, 486 F. App'x 806, 809 (11th Cir. 2012) (quoting *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985).)

Bailey next asserts that the ALJ believed that claimant could continue at his old job, since he had done it in the past. (Doc. 14 at 9.) Here is what the ALJ actually said:

> Claimant also did heavy work through February 2010 (painting and doing bodywork on cars), forcing any objective observer to wonder -- what's different now? If he could do heavy work as recently as February 2010, why not later as well? What changed?

(Tr. 20.) While it may have been a poor choice of words, the clear import of the statement is that claimant failed to offer any credible evidence showing that his condition had so rapidly deteriorated that he could no longer work at all. Moreover, the ALJ explicitly held that Bailey "is unable to perform any past relevant work" later on the very same page. (*Id.*)

While plaintiff nit-picks at many other aspects of the ALJ's credibility finding, the Court is satisfied that adequate evidence supports his decision. Claimant was still living a fairly active life according to his own testimony, and the medical evidence of record from examining physicians does not support his assertion that he is totally debilitated. And the ALJ's explanations for discounting Bailey's testimony are adequate. *See Johns v. Bowen*, 821F.2d 551, 557 (11th Cir. 1987) ("Where the claimant's testimony is critical, the fact finder must articulate adequate reasons for questioning a claimant's credibility"). Hence, the Court finds that the ALJ's finding -- that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC assessment -- is supported by substantial evidence of record. (Tr. 17.)

### C. Failure to Discuss Stroke

Finally, Bailey complains that the ALJ failed to consider claimant's stroke in making his RFC finding.[4] (Doc. 14 at 11-12.) But his only evidence of a stroke is from December 2007, which predates the disability onset date by several years. (Tr. 337.) At that appointment, Bailey complained that his eyes felt crossed and his equilibrium was off. (*Id.*) Dr. Masroor ordered an MRI, which showed "a small infarct in the left thalamus extending into the mid brain." (*Id.*) There is nothing else in the record about the stroke, much less any evidence suggesting that it caused effects lasting more than 12 months, as required under the Act.[5] *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In fact, he went back to work afterwards.

The ALJ considered the entire record in making his RFC finding, and having reviewed that record, the Court has found no medical evidence supporting any lasting limiting impact from the stroke. And

---

[4] Notably, he never states that it was error for the ALJ to fail to consider the impairment at step two. (Doc. 14 at 11-12.)

[5] When examined by Dr. Martinez, he denied "syncope, seizures, weakness, tremor, sensory loss, or in-coordination." (Tr. 370.) Additionally, his only psychiatric complaints were depression and anxiety as his psychiatric complaints. (*Id.*) A neurological examination showed normal reflexes, good motor ability and strength, with only decreased sensation of the left lower leg. (Tr. 371.) Similarly, Dr. Wallace noted that Bailey's communication was intact and clear, and he did not demonstrate any loss in coordination. (Tr. 357.)

any error in failing to discuss it is, at worst, harmless. *E.g., Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 746 n.3 (11th Cir. 2008) (applying harmless error analysis to social security appeals where the record does not indicate that a legal error "affected the ALJ's decision"); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (same); *see also Shinseki v. Sanders*, 556 U.S. 396, 407-12 (2009) (explaining harmless error in two Veterans Administration cases).

### III. CONCLUSION

The ALJ's determination that claimant could return to light work is supported by substantial evidence of record. Consequently, the Commissioner's decision denying benefits should be **AFFIRMED**.

**SO REPORTED AND RECOMMENDED** this 12Th day of March, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA